IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:20cr62 |
| | ) | |
| FRANCISCO EDGARDO PALACIOS ARIAS, | ) ) | |
| **Defendant** | ) | |

### REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISMISS INDICTMENT

Francisco Edgardo Palacios Arias, through counsel, replies as follows to the government's response to his motion to dismiss the indictment in this case:

**I.   The civil Fourth Circuit case that the government relies on to argue that Mr. Palacios's counsel's ineffectiveness is not a violation of his right to due process in this case has been vacated and misses the mark of Mr. Palacios's argument.**

The government's primary response in this case to the due process violation that Mr. Palacios has alleged is that ineffective assistance of privately retained counsel is not a cognizable due process violation in a challenge to an indictment in a § 1326 criminal case. *See* ECF No. 30 at 4-7. The case that the government argues is definitive on this issue is *Afanwi v. Mukasey*, 526 F.3d 788 (4th Cir. 2008). In 2008, in *Afanwi*, the Fourth Circuit was evaluating a petition for review of the immigration judge's denial (and the Board of Immigration Appeal's subsequent affirmation of that denial) of Mr. Afanwi's application for relief from deportation. Mr. Afanwi had applied for relief from deportation, which an immigration judge had denied. *Id.* at 791. He had timely appealed that denial to the Board of Immigration Appeals ("BIA"). *Id.* The Board of Immigration Appeals had denied the appeal and sent a copy of the denial to Mr. Afanwi's attorney of record. *Id.* Mr. Afanwi's attorney of record had moved offices and not checked his mailbox

1

for many weeks and thus did not learn of the BIA's denial until well past the time in which Mr. Afanwi would have had to file a petition for review of the BIA's denial with the Fourth Circuit. *Id.* Mr. Afanwi alleged that his attorney was ineffective for not checking his mail and informing Mr. Afanwi of the BIA's denial in a timely fashion. *Id.*

The *Afanwi* court asked the parties to brief whether or not "an alien has a Fifth Amendment right to effective assistance of counsel in the filing of a petition for review and, if so, whether the right extends to other aspects of the petition-for-review process." *Id.* at 792. After noting that nine other circuits have found that "counsel's performance in a removal proceeding can be so deficient that it deprives the alien of his due process right to a fair hearing," *id.* at 797 and n.34, n.35, the *Afanwi* court departed from every one of those courts of appeal to find that because Mr. Afanwi's counsel was privately retained, that counsel's failure to properly check his mail and pursue a timely petition for review on Mr. Afanwi's part was not fundamentally unfair and did not deny Mr. Afanwi due process. *Id.* at 799.

On appeal to the Supreme Court, the government conceded that the *Afanwi* court had erred in other respects. *See* Brief for the Respondent at 15-16, *Afanwi v. Holder*, 2009 WL 2625869 (No. 08-906). Given that concession, the Supreme Court vacated the judgment below and remanded the case for further consideration. *See Afanwi v. Holder*, 588 U.S. 801 (2009). The Fourth Circuit further remanded the case to the Board of Immigration Appeals and did not later revisit this issue. The Supreme Court's action in vacating the Fourth Circuit's judgment in *Afanwi* did not leave a part of the opinion in effect. It vacated the entire judgment and opinion. *See Afanwi v. Holder*, 588 U.S. 801 (2009); *see also Adams v. Aiken*, 41 F.3d 175, 179 (4th Cir. 1994) (recognizing that where the Supreme Court vacates a judgment, that does not leave a portion of the original opinion in place); *Spencer v. Early*, 278 F. App'x 254, 262 (4th Cir. 2008) (same).

The Fourth Circuit itself has recognized that *Afanwi* is no longer good law because the Supreme Court vacated that opinion. *See Onema v. Holder*, 517 F. App'x 139 (4th Cir. 2013). Thus, the government's argument is unpersuasive[1].

It is beneficial at this point to remember that the due process violation that the Court analyzes in looking at a challenge to an indictment in a § 1326 case comes from a historical background critical of the fundamental fairness of relying on administrative determinations to prosecute someone criminally. In *Mendoza-Lopez*, the Supreme Court evaluated a challenge to the validity of the underlying deportation order in an illegal reentry prosecution under 8 U.S.C. § 1326. Immigration officials had arrested the respondents in *Mendoza-Lopez* for being in the country illegally. During the respondents' group deportation hearing, the immigration judge addressed the respondents and eleven other individuals at once. The immigration judge ordered that the respondents be deported, and immigration officials bused the respondents to the Mexican border at El Paso, Texas. *Id.* at 830.

A short time later, law enforcement officers again found the respondents together in the United States. A grand jury indicted the respondents for illegally reentering the United States in violation of 8 U.S.C. § 1326. The respondents moved to dismiss their indictments, arguing that their deportation hearings were fundamentally unfair because the immigration judge did not properly inform them that they had a right to obtain counsel or that they could have applied to suspend their deportations. *Mendoza-Lopez*, 481 U.S. at 831.

By that time, some courts of appeals had held that 8 U.S.C. § 1326 itself permitted collateral attacks, *see United States v. Mendoza-Lopez*, 781 F.2d 111, 112 (8th Cir. 1985) (noting that Third,

---

[1] Likewise, the government's reliance on *Massis v. Mukasey*, 549 F.3d 631 (4th Cir. 2008), and *Cruz v. Holder*, 321 F. App'x 280 (4th Cir. 2009), fails for the same reason: both rely on *Afanwi* before the Supreme Court vacated the *Afanwi* decision in October 2009.

Seventh, and Ninth Circuits interpreted § 1326 to be premised upon "lawful" deportation orders), while other courts of appeals foreclosed collateral attacks on prior deportation orders, *id.* (noting that Second, Fifth, and Tenth Circuits found that because Congress had provided other avenues to appeal administrative deportation orders, no collateral attacks on those orders could be brought in § 1326 cases). After reviewing the text and background of § 1326, the Supreme Court concluded that Congress did not intend "to sanction challenges to deportation orders in proceedings under § 1326." *Mendoza-Lopez*, 481 U.S. at 837. Due process, however, required courts to allow defendants in illegal reentry cases to collaterally attack prior deportation orders. *Id.* at 838. The Supreme Court made that determination after reviewing several cases involving administrative determinations.

The first case that *Mendoza-Lopez* relied on was *Estep v. United States*, 327 U.S. 114 (1946). In *Estep*, the Supreme Court determined that two men who were drafted for military duty could present a defense at trial that the local civilian boards that administered executive regulations for the draft had erroneously determined that they were available for military service. Both men argued that as pastors, they should have been exempted from military service. They refused to be inducted into the military, so the government charged them criminally. The statute governing military classifications made all decisions of the local boards final except where the President created rules and regulations for appeal. *Id.* at 119. The *Estep* Court found that even where a statute precludes judicial review, the Constitution itself requires judicial review where the administrative determination was lawless in order to defend one's self in a criminal case, thus allowing Mr. Estep to present his defense that the local board had improperly classified him at trial. Id. at 120-22. "We cannot readily infer that Congress departed so far from the traditional concepts of a fair trial when it made the actions of the local boards 'final' as to provide that a

citizen of this country should go to jail for not obeying an unlawful order of an administrative agency." *Id.* at 122.

The second case *Mendoza-Lopez* relied on was *Yakus v. United States*, 321 U.S. 414 (1944). In *Yakus*, the Supreme Court evaluated a challenge to price control violation convictions under statutes Congress enacted temporarily during wartime. Like *Mendoza-Lopez*, the *Yakus* Court concluded that the statute at issue did not provide for collateral attacks on the administrative decision of what price limits to set. Id. at 427-31. The *Yakus* Court recognized, however, that administrative action is "reviewable in this Court and if contrary to due process will be corrected here." Id. at 434. The exigencies of wartime price regulation dictated that in *Yakus*, the administrative regulations that served as the basis for later criminal prosecution were not subject to collateral attack where Congress had created a special federal court, the "Emergency Court of Appeals" made up of district and circuit judges that the Chief Justice of the Supreme Court designated, to hear challenges to the regulations setting prices. *Id.* at 434-35.

The *Mendoza-Lopez* Court recognized that the holding in *Yakus* was "motivated by the exigencies of wartime" and dealt with the propriety of the regulations themselves in a situation where adequate judicial review in another forum was still available. 481 U.S. at 838 n.15. At a minimum, "the result of an administrative proceeding may not be used as a conclusive element of a criminal offense where the judicial review that legitimated such a practice in the first instance has effectively been denied." *Id.* The Court then compared *Yakus* to *McKart v. United States*, 395 U.S. 185 (1969), which held that a person whom a local board wrongly classified as available for military service could collaterally attack that designation in a criminal prosecution against him for failing to report for a physical exam for the draft, even though the person failed to exhaust his administrative remedies.

In *McKart*, the Supreme Court recognized that:

> it is well to remember that use of the exhaustion doctrine in criminal cases can be exceedingly harsh. The defendant is often stripped of his only defense; he must go to jail without having any judicial review of an assertedly invalid order. The deprivation of judicial review occurs not when the affected person is affirmatively asking for assistance from the courts but when the Government is attempting to impose criminal sanctions on him. Such a result should not be tolerated unless the interests underlying the exhaustion rule clearly outweigh the severe burden imposed upon the registrant if he is denied judicial review.

*Id.* at 197. In balancing the interests of exhaustion with the burden on Mr. McKart, the Court found critical that "proper interpretation" of the regulation "is certainly not a matter of discretion." *Id.* at 198. Since judicial review would not be "significantly aided by an additional administrative decision of this sort, we cannot see any compelling reason why petitioner's failure to appeal should bar his only defense to a criminal prosecution." *Id.* at 199.

It is against this background that the Supreme Court in *Mendoza-Lopez* held that a defendant in an illegal reentry prosecution under 8 U.S.C. § 1326 could collaterally attack "defects in an administrative proceeding [that] foreclose[d] judicial review of that proceeding . . . ." 481 U.S. at 838; *see also Sessions v. Dimaya*, 138 S. Ct. 1204, 1212-13 (2018) (observing that deportation proceedings have heightened due process requirements like those in criminal cases because "deportation is a particularly severe penalty, which may be of greater concern to a convicted alien than any potential jail sentence.") (internal quotation marks omitted). At a minimum, the Supreme Court emphasized, deprivation of a criminal defendant's right to have the administrative decision reviewed requires "that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense." *Id.* at 839. In sum, when looking at the holdings and facts of *Mendoza-Lopez*, *Estep*, and *McKart*, it is clear that Mr. Palacios can challenge his lawyer's ineffectiveness as a defense to his prosecution for illegally reentering the United States if (1) that ineffectiveness is

6

related to an essential element of a subsequent criminal prosecution and (2) judicial review of that proceeding was effectively foreclosed. *See, e.g.*, *United States v. Lopez-Chavez*, 757 F.3d 1033 (9th Cir. 2014); *Iturribarria v. INS*, 321 F.3d 889, 899-900 (9th Cir. 2003); *Uspango v. Ashcroft*, 289 F.3d 226, 231 (3d Cir.2002) (observing that ineffective assistance of counsel in removal proceeding violates due process when foreign national was prevented from reasonably presenting his case); *Huicochea–Gomez v. INS*, 237 F.3d 696, 699 (6th Cir.2001); *Akinwunmi v. INS*, 194 F.3d 1340, 1341 (10th Cir.1999); *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir.1999) ("Aliens enjoy the right to the effective assistance of counsel in deportation proceedings. Numerous courts have recognized that a deportation proceeding implicates an alien's liberty interest, which is protected by the Due Process Clause.") (internal citation omitted); *Mojsilovic v. INS*, 156 F.3d 743, 748 (7th Cir.1998) ("we have held that counsel at a deportation hearing may be so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause.") (internal quotation marks omitted); *Saleh v. U.S. Dep't of Justice*, 962 F.2d 234, 241 (2d Cir.1992) (same); *Lozada v. INS*, 857 F.2d 10, 13–14 (1st Cir.1988) (same).

To make a colorable showing of ineffective assistance of counsel, an alien must show that counsel's deficient performance resulted in prejudice such that there is a "reasonable probability" that the outcome of the proceedings would have been different. *See United States v. El Shami*, 434 F.3d 659, 664-65 (4th Cir. 2005). Mr. Palacios has outlined the factual basis and legal framework for this prejudice as well as the basis on which the Court must find that Mr. Palacios is excused from any further exhaustion of administrative remedies and seeking judicial review in his motion. *See* ECF No. 24 at 8-12. Mr. Palacios will present further evidence at the evidentiary hearing.

**II.     In trying to defend the constitutionality of § 1326, the government has, unfortunately, relied on a legal argument that the Supreme Court soundly rejected in *Arlington Heights*.**

The government has urged the Court to analyze the constitutional challenge in this case under a "rational-basis review." *See* ECF No. 30 at 14-19. While the Supreme Court has used "rational-basis review" to evaluate other types of constitutional challenges to congressional acts, the Supreme Court has made quite clear that constitutional challenges based on racial discrimination are different. The government wants to ignore that Mr. Palacios is making a race-based challenge to § 1326 by trying to categorize Mr. Palacios's motion as an attack simply to an immigration law. The Court cannot simply ignore, however, that this is a clear race-based challenged.

The government cites *United States v. O'Brien*, 391 U.S. 367 (1968), in its effort to recast the nature of Mr. Palacios's race-based challenge. In *O'Brien*, the Supreme Court evaluated a First Amendment challenge to a criminal law prohibiting destruction or mutilation of draft registration cards. The Court, looking at the First Amendment challenge and using the rational basis review standard, rejected Mr. O'Brien's argument that because Congress enacted the law with a wrongful purpose—the suppression of speech, that intention made the law unconstitutional. *Id.* at 383-86. In *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 n.10 (1977) (citing this very section in *O'Brien*), the Supreme Court acknowledged that some previous cases created tension with the appropriate focus of a constitutional challenge—a law's unconstitutional effect verses a law's unconstitutional purpose. But, the Supreme Court made very clear in *Arlington Heights* that "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Id.*; *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534-38 (1993) (analyzing discriminatory purpose of law to

8

target religious group in Free Exercise context, which like racial discrimination, triggers the Court's strictest scrutiny); *Washington v. Davis*, 426 U.S. 229, 239-42 (1976) (discussing historical cases involving laws enacted with the purpose of racial discrimination); *NAACP v. McCrory*, 831 F.3d 204, 233-34 (4th Cir. 2016) (rejecting trial court's use of rational-basis review in race-based constitutional challenge).

The government's argument that subsequent reenactments of the law have dissipated the clear discriminatory origins of the law also fails. Later enactments of racially discriminatory laws and policies do not save them from an Equal Protection challenge. *See, e.g., United States v. Fordice*, 505 U.S. 717, 728 (1992) ("Our decisions establish that a State does not discharge its constitutional obligations until it eradicates policies and practices traceable to its prior de jure dual system that continue to foster segregation."); *see also Ramos v. Louisiana*, 140 S. Ct. 1390, 1401 n.44 (2020) (observing that later reenactments of racially discriminatory law did not save scrutiny of original purposes). There have been no major changes to the illegal reentry law that Congress enacted in 1926. The basic punishment even remains the same nearly 100 years later—up to two years in prison. To the extent that the Court considers the government's argument on this point as rebutting the original discriminatory basis for the law, Mr. Palacios intends to present evidence at the evidentiary hearing about the continued discriminatory purpose of the law.

The government's argument that the materials Mr. Palacios submitted in support of his motion do not necessarily represent the intent of every congressperson also belies the state of the law. As the Supreme Court in *Arlington Heights* observed:

> *Davis* does not require a plaintiff to prove that the challenged action rested solely on racially discriminatory purposes. Rarely can it be said that a legislature or administrative body operating under a broad mandate made a decision motivated solely by a single concern, or even that a particular purpose was the "dominant" or "primary" one. In fact, it is because legislators and administrators are properly concerned with balancing numerous competing considerations that courts refrain

> from reviewing the merits of their decisions, absent a showing of arbitrariness or irrationality. But racial discrimination is not just another competing consideration. When there is a proof that a discriminatory purpose has been a motivating factor in the decision, this judicial deference is no longer justified.

429 U.S. at 265-66. The legislators that Mr. Palacios identified and quoted in his motion also were not random congress members. They were the drafters of the legislation and the heads of the immigration committee. And their views, which were not privately held but rather published publicly in the congressional record, are attributable to other members who chose not to refute the racism. *See, e.g., Staub v. Proctor Hospital*, 562 U.S. 411, 419-22 (2011)

## CONCLUSION

As set forth above and in Mr. Palacios's motion, Mr. Palacios's attorney's ineffectiveness violated his right to due process in his deportation proceeding, rendering the deportation order invalid. Congress enacted the crime of illegal reentry with a racially discriminatory purpose which cannot stand constitutional scrutiny. This Court must dismiss the indictment against him.

Respectfully submitted,
FRANCISCO EDGARDO PALACIOS ARIAS

By: _____/s/_____
Laura Koenig
Va. Bar No. 86840
Counsel for Defendant
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0881
Fax (804) 648-5033
laura_koenig@fd.org