IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:20cr62 |
| | ) | |
| FRANCISCO EDGARDO PALACIOS ARIAS, | ) ) | |
| Defendant | ) | |

## MR. PALACIOS'S SENTENCING POSITION

Francisco Palacios, through counsel, files this position with regard to sentencing pursuant to Rule 32 of the Federal Rules of Criminal Procedure. Mr. Palacios has no objections to the modified presentence report[1]. Mr. Palacios stands before the Court as a result of his conviction for illegally reentering the United States in violation of 8 U.S.C. § 1326 after he pled guilty to that charge pursuant to a conditional plea agreement. The conditional plea agreement specifically allows Mr. Palacios to appeal the Court's denial of his Motion to Dismiss Indictment, *see* ECF Nos. 24 and 37, but does not allow him to appeal any other aspect of the case, including his sentencing. *See* ECF No. 40 at ¶5. The advisory sentencing guideline range for this offense is 1 to 7 months of imprisonment. For the reasons discussed below, Mr. Palacios requests that this

---

[1] The modified presentence report notes that Mr. Palacios has waived his right to appeal his sentence pursuant to 18 U.S.C. § 3742. *See* ECF No. 45 at ¶5. The modified presentence report does not indicate that the plea agreement in this case is a conditional one, which specifically preserves Mr. Palacios's right to appeal the Court's denial of his motion challenging the indictment in this case. *See* ECF No. 40 at ¶5.

Additionally, always before filing a sentencing position, undersigned counsel reviews the presentence report with her client. Because the modified presentence report was filed on December 28, 2020, when undersigned counsel was out of the office on annual leave, she has not been able to send a copy of the presentence report to Mr. Palacios and review it with him before filing this sentencing position. Because there are no legal objections to the presentencing report and no personal history sections to correct, undersigned counsel can state that there are no objections and corrections to the modified presentence report. She will, of course, review the modified presentence report with Mr. Palacios before his sentencing.

Court impose the statutory maximum prison sentence, twenty-four months, followed by no further supervision.

I.        **Sentencing Factors under 18 U.S.C. § 3553(a)**

After considering the appropriately-calculated advisory guideline range, courts are to consider all the factors under 18 U.S.C. § 3553(a) in reaching the appropriate, individualized sentence for the particular case. *See Gall v. United States*, 552 U.S. 38, 49 (2007); *Kimbrough v. United States*, 552 U.S. 58, 90 (2007) (observing that the Guidelines "now serve as one factor among several courts must consider in determining an appropriate sentence").

In addition to the advisory guideline range, the other factors that a court must consider when determining an appropriate sentence include the nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1); the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with appropriate correctional treatment, *id.* at § 3553(a)(2); the kinds of sentences available, *id.* at 3553(a)(3); the need to avoid unwarranted disparity among defendants with similar records and conduct, *id.* at § 3553(a)(6); and the need to provide any restitution to any victims of the offense, *id.* at § 3553(a)(7). Pursuant to 18 U.S.C. § 3553(a), courts must "impose a sentence sufficient, but not greater than necessary to comply with the purposes" of sentencing.

II.       **Discussion of the facts related to the § 3553(a) factors**

Francisco Palacios was born in El Salvador in 1996. At that time, El Salvador was just a few years out from the end of a long and devastating civil war. The Secretary General of the United Nations forwarded to the U.N. Security Council in 1993 a report on the severity of the damages that the Salvadoran civil war had caused. The report began:

> Violence was a fire which swept over the fields of El Salvador; it burst into villages, cut off roads and destroyed highways and bridges, energy sources and transmission lines; it reached the cities and entered families, sacred areas and educational centres; it struck at justice and filled the public administration with victims; and it singled out as an enemy anyone who was not on the list of friends. Violence turned everything to death and destruction, for such is the senselessness of that breach of the calm plenitude which accompanies the rule of law, the essential nature of violence being suddenly or gradually to alter the certainty which the law nurtures in human beings when this change does not take place through the normal mechanisms of the rule of law. The victims were Salvadorians and foreigners of all backgrounds and all social and economic classes, for in its blind cruelty violence leaves everyone equally defenceless.

The Commission on the Truth for El Salvador, *From Madness to Hope: the 12-Year War in El Salvador: Report of the Commission on the Truth for El Salvador*, U.N. Security Council (April 1, 1993), *available at* https://www.usip.org/sites/default/files/file/ElSalvador-Report.pdf (last visited Jan. 2, 2021). During the war, tens of thousands of Salvadorans were murdered, massacred, and abducted.

In 1996, the year that Mr. Palacios was born, the United States began to aggressively deport immigrants back to their home countries. *See* United Nations Office on Drugs and Crime, *Crime and Development in Central America: Caught in the Crossfire at 16* (May 2007), https://www.unodc.org/documents/data-and-analysis/Central-america-study-en.pdf. Mara Salvatrucha ("MS13"), the Salvadoran street gang that formed on the streets of Los Angeles, California in the 1980s and spread to El Salvador itself once its members were deported, flourished. *Id.* at 58-59. El Salvador has historically had one of the highest murder rates in the world. *Id.* at 53. Kidnapping and extortion have also become increasingly common in all parts of El Salvador. *Id.* at 69.

As Mr. Palacios's family testified at his motions hearing in October 2020, in September 2001, when Mr. Palacios was just about five years old, his uncle, Miguel Angel Arias Granados, and another individual, were kidnapped in El Salvador and tortured for eight days. After Mr.

3

Arias's kidnaping, the family kept Mr. Palacios hidden in his aunt's house after gang members had come to the family's property looking for Mr. Palacios. Mr. Palacios arrived in the United States in about 2003, when he was just seven years old. He grew up in the United States, went to school in the Richmond area, and speaks fluent English. In August 2017, while Mr. Palacios was in removal proceedings, Mr. Palacios's aunt—also with a last name of Arias—was brutally murdered in El Salvador. Her father was injured in the attack and was hospitalized. The attackers were never caught.

In March 2018, Mr. Palacios was removed from the United States and sent to El Salvador via plane. Sometime after being sent back to El Salvador, Mr. Palacios was riding in a car with extended family members of his that still lived in El Salvador. MS13 gang members had set up a roadblock and were stopping cars going down the road that Mr. Palacios and his family were traveling on. Because Mr. Palacios was new to the area and had family remaining in the United States, the gang members took Mr. Palacios out of the car and started to threaten him. They put guns to his head and started beating him. Mr. Palacios's family, who had limited means, came up with what money they could to pay extortion money to the gang members to get them to stop attacking Mr. Palacios. Upon receiving the money, the gang members stopped beating Mr. Palacios and let Mr. Palacios and his family pass. Mr. Palacios and his family reported this incident to the local police, but no action was taken as MS13 had already corrupted the local police department.

About a month later, Mr. Palacios and his cousin were outside working to mend a broken fence on his family's land. MS13 gang members approached Mr. Palacios and his cousin. They questioned Mr. Palacios in particular about joining MS13. When Mr. Palacios made it clear that he was not interested in joining the gang, the gang members physically attacked him. They stabbed

4

him in his left arm under his elbow before eventually leaving Mr. Palacios and his cousin, beaten and in bad shape on the side of the road.

About a month after that, Mr. Palacios and his grandmother were at home when MS13 gang members came to the home. They instructed Mr. Palacios to kneel to the ground. They told Mr. Palacios that he had harmed a brother of theirs when Mr. Palacios tried to fight back during the attack the previous month. Mr. Palacios explained that he had just been defending himself, and again reiterated that he would not join the gang. The gang members then took a machete and smashed his left pinky finger—breaking it, stabbed his left hand, and whipped him with a leather strap. Mr. Palacios still has marks on his back from this attack. Eventually, Mr. Palacios returned to the United States to escape this violence, but was caught by immigration authorities and brought to this Court for prosecution.

Mr. Palacios has challenged the use of the previous removal order in this case and the constitutionality of the law he is being prosecuted under. He has preserved his right to appeal the Court's denial of those challenges and plans to appeal. Once the Court denied his motion challenging the indictment in this case, *see* ECF No. 37, Mr. Palacios made clear to undersigned counsel that he wanted to ask the Court to impose the maximum sentence this Court could under the law to maximize his chances of still being in the United States once the Fourth Circuit decides his appeal. To this end, undersigned counsel has already ordered and received copies of the transcripts of the motion hearings and begun drafting the opening brief for the appeal to expedite the appellate process. As the Court recognized at Mr. Palacios's plea hearing in December 2020, it "makes sense" that Mr. Palacios would want to remain in the United States while his appeal is being heard so that he could benefit from any favorable ruling from the Fourth Circuit.

If Mr. Palacios were to be successful on appeal in this case, it is very possible that given the past persecution he suffered, and suffered directly, from MS13 once he was deported to El Salvador that he could qualify for relief from removal. Specifically, Mr. Palacios would be eligible for asylum and withholding of removal and potentially eligible for relief under the Convention Against Torture. Those forms of immigration relief are not available to people living outside the United States. Thus, once Mr. Palacios is deported, these forms of immigration relief will no longer be available to him.

While the sentence Mr. Palacios is requesting is an unusual one and certainly the first time that undersigned counsel—who has represented thousands of criminal defendants over the past twelve years—has asked for a sentence higher than the prosecutor on the case is seeking, it is one that is just and fair under 18 U.S.C. § 3553(a) given all of the circumstances in this case and in Mr. Palacios's history and characteristics. The sentence is also not reviewable on appeal by the defense. The government has indicated to undersigned counsel that while it is not joining in Mr. Palacios's request for a higher sentence, it has no plans to appeal the Court's sentence if the Court sentences Mr. Palacios to the statutory maximum. By the time of sentencing, Mr. Palacios will have served ten months in custody of a possible twenty-four months available under the statute of conviction. Undersigned counsel will file the notice of appeal in this case as soon as possible after the judgment in this case is entered. She intends to pursue the appeal diligently without any continuances of the briefing. While it is certainly still possible that Mr. Palacios could finish a sentence of twenty-four months in custody before the Fourth Circuit decides his appeal, it is a risk that Mr. Palacios is fully prepared to take. Given the direct persecution he suffered after being deported in 2018, his life very well may depend on it.

The threat that MS13 and rival gangs pose to law abiding El Salvadoran citizens has certainly not diminished in the nearly three years since Mr. Palacios was deported. El Salvador continues to have one of the world's highest homicide rates. *See* Human Rights Watch, *El Salvador: Events of 2019* (Jan. 31, 2019), *available at* https://www.hrw.org/world-report/2020/country-chapters/el-salvador. The United States Department of State reported that:

> The major gangs (MS-13 and two factions of 18th Street) controlled their own territory. Gang members did not allow persons living in another gang's area to enter their territory, even when travelling via public transportation. Gangs forced persons to present government-issued identification cards (containing their addresses) to determine their residence. If gang members discovered that a person lived in a rival gang's territory, that person risked being killed, beaten, or not allowed to enter the territory.

United States Bureau of Democracy, Human Rights, and Labor, *2019 Country Reports on Human Rights Practices: El Salvador*, *available at* https://www.state.gov/reports/2019-country-reports-on-human-rights-practices/el-salvador/. Sending Mr. Palacios home without giving him a chance to stay and see if he can win his appeal is not justice in this case. Rather, continuing to incarcerate him for a little longer may ultimately ensure Mr. Palacios's permanent freedom.

As Robert Kennedy once said to a crowd of people gathered at the University of Cape Town, "Each time a man stands up for an ideal, or acts to improve the lot of others, or strikes out against injustice, he sends forth a tiny ripple of hope, and crossing each other from a million different centers of energy and daring those ripples build a current which can sweep down the mightiest walls of oppression and resistance." *See* Mark Memmott, *LOOKING BACK: RFK's 'Ripple Of Hope' Speech In South Africa*, NPR: The Two Way (June 30, 2013), *available at* https://www.npr.org/sections/thetwo-way/2013/06/30/197342656/looking-back-rfks-ripple-of-hope-speech-in-south-africa. Mr. Palacios is standing up for his ideals and just asks the Court for a little bit of an assist to get there.

## Conclusion

For the foregoing reasons, Mr. Palacios asks the Court to impose a sentence of twenty-four months followed by no further supervision. This sentence is sufficient, but not greater than necessary to address the sentencing factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,
FRANCISCO EDGARDO PALACIOS ARIAS

By: _____/s/_____
Laura Koenig
Va. Bar No. 86840
Counsel for Defendant
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0881
Fax (804) 648-5033
laura_koenig@fd.org